UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MID-AMERICA MORTGAGE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. |
| VS. | ) |
| | ) 3:18-CV-2806-G |
| UNITED SECURITY FINANCIAL CORP., | ) |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is United Security Financial Corporation ("USFC")'s motion to dismiss Mid-America Mortgage, Inc. ("Mid-America")'s first amended complaint (docket entry 10) pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Motion to Dismiss (docket entry 13). For the reasons stated below, USFC's motion is granted in part and denied in part.

I. BACKGROUND

Mid-America is a foreign corporation authorized to do business in Texas, with its principal place of business in Dallas County, Texas. *See* First Amended Complaint

at 1. USFC is also a foreign corporation authorized to do business in Texas, but its principal place of business is Utah. *See* Notice of Removal (docket entry 1) at 2. Both Mid-America and USFC participate in the mortgage business. First Amended Complaint at 2. In particular, the business operations of both Mid-America and USFC include the origination and servicing of mortgage loans associated with residential real estate. *Id*.

As part of their business operations, USFC and Mid-America entered into two contracts, both titled "Servicing Rights Purchase and Sale Agreement" (collectively "Purchase Agreements")—one dated October 31, 2016 and one dated March 22, 2017. *Id.*; Motion to Dismiss at 1. In general, the terms of the Purchase Agreements provided that USFC would transfer its rights to service certain loan portfolios subject to the Purchase Agreements—including loan portfolios guaranteed or insured by governmental agencies such as the Veteran's Administration or Ginnie Mae—to Mid-America in exchange for Mid-America's payment in excess of $10,500,000.00. First Amended Complaint at 2-3; Motion to Dismiss at 1. For Mid-America to properly service the loan portfolios it received from USFC, the Purchase Agreements also required that USFC provide Mid-America with a large quantity of information such as loan applications, required disclosures, promissory notes and other loan documents, mortgages, deeds of trusts, insurance and tax information, and guarantees from government and quasi-governmental agencies, among other things. First

Amended Complaint at 2.  Moreover, because this information was crucial to Mid-America's ability to service the loan portfolios, the Purchase Agreements also specified how the information was to be transferred.  *Id*.  The agreed upon procedures for transferring the information included preliminary data transfers, opportunities for quality control, and final reconciliations.  *Id*.

The Purchase Agreements also contained multiple provisions to protect Mid-America from certain risks involved in the transaction.  *Id*. at 3.  In pertinent part, the Purchase Agreements contained numerous representations, warranties, and covenants from USFC to Mid-America including, but not limited to, the following within referenced sections of the Purchase Agreements:

> A. The delivery dates of loan files, updates, and other information (§ 2.06(a-d, f));
> B. The accuracy of information transferred (§ 2.06(e));
> C. The transfer of all escrow and custodial funds (§ 2.08);
> D. The payment of interest on escrowed funds (§ 2.13);
> E. That all required notices were sent, or would be sent, to borrowers (§ 2.12) and taxing authorities (§ 2.14);
> F. That USFC would not refinance loans in the portfolios subject to the Purchase Agreements on or before certain specified dates(§ 3.04);
> G. That all contingent liabilities had been disclosed (§ 4.01(j));
> H. That the mortgage loans subject to the Purchase Agreements conformed to industry standards and the "Applicable Requirements" as defined in the Purchase Agreements, and

      that USFC had not impaired the value of the servicing rights being transferred or collateral associated with those loans (§ 4.02(a));
I. That each mortgage loan was enforceable according to the terms of the transferred information (§ 4.02(b));
J. That Mid-America would not be required to make any undisclosed payment or advance (§ 4.02(c));
K. That the mortgage loans being serviced were secured by a first lien on the associated real property (§ 4.02(d));
L. That there were no undisclosed defaults with respect to the underlying mortgage loans (§ 4.02(f));
M. That defendant and any prior servicer had complied with all laws and regulations (§ 4.02(i));
N. That the mortgage files contained all documents necessary to enable Mid-America to exercise its rights (§ 4.02(w));
O. That the mortgage loan files had characteristics as represented and warranted in the Purchase Agreements (§ 4.02(ee)); and
P. To indemnify Mid-America for certain losses (§ 7.02).

*Id*. at 3-4. Additionally, because the Purchase Agreements required USFC to transfer a large volume of information to Mid-America, the Purchase Agreements also allowed Mid-America to defer payment of some of the purchase price rather than make one lump sum payment at closing. *Id*. at 4.

  Soon after entering into the Purchase Agreements, however, Mid-America alleges that USFC breached the terms of the Purchase Agreements in several respects. *Id*. at 4-5. In particular, Mid-America alleges that USFC breached the Purchase

Agreements by: (1) failing to send complete and accurate loan files; (2) failing to properly escrow and transfer all required escrow funds, custodial funds, and accrued interest; (3) failing to send borrowers and taxing authorities all required notices; (4) refinancing loans in the portfolios subject to the Purchase Agreements on or before the dates allowed in the Purchase Agreements; (5) failing to disclose all contingent liabilities; (6) contradicting representations USFC previously made about the loans; (7) failing to properly secure mortgage loans within the portfolios by obtaining a first lien on the real property associated with said mortgage loans; and (8) failing to disclose defaults with respect to several mortgage loans. *Id*. at 5-6. As a result of USFC's alleged breaches, Mid-America avers that it has not only lost revenue, but also that it has been forced to make payments to government and non-government entities. *Id*. at 6.

Moreover, after Mid-America became aware of USFC's alleged breaches, Mid-America sent USFC demands for indemnification, as allowed under the terms of the Purchase Agreements. *Id*. at 6. Specifically, on or about July 20, Mid-America sent a comprehensive written demand that USFC indemnify Mid-America for $2,191,270.02 in losses that Mid-America had allegedly suffered. *Id*. at 7. After receiving Mid-America's demand letter, USFC allegedly refused to honor its indemnity obligations under the Purchase Agreements. *Id*. at 9. By that time, Mid-America maintains that it had paid all of its obligations under the Purchase

Agreements, except for a final deferred holdback payment in the amount of $714,854.24. *Id*. at 4, 9. As of now, Mid-America has not paid USFC the final deferred holdback payment, and has instead allegedly exercised its right under the Purchase Agreement to set off the final deferred holdback payment against USFC's alleged indemnity obligations. *Id*. at 9.

On September 25, 2018, Mid-America filed its original petition against USFC in the 101st Judicial District Court in Dallas County, Texas. Notice of Removal at 1. Shortly thereafter, on October 22, 2018, USFC removed the case from the 101st Judicial District Court to this court. *Id*. at 1-5. Mid-America then filed its first amended complaint on November 9, 2018. *See* First Amended Complaint at 12. On November 21, 2018, USFC filed the instant motion to dismiss. *See* Motion to Dismiss at 1. A few weeks later, on December 12, 2018, Mid-America filed its response to USFC's motion to dismiss. *See* Response to Motion to Dismiss ("Response") (docket entry 14) at 9. On December 26, 2018, USFC filed its reply to its motion to dismiss. *See* Reply (docket entry 17) at 6. USFC's motion to dismiss is now ripe for decision.

II. ANALYSIS

A. Legal Standard for 12(b)(6) Motion

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of

relief." *Id*. The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id*. at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (quoting Federal Rule of Civil Procedure 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible." See *id*. at 679, 683.

B. Application

1. *Breach of Contract*

"Under Texas law, the essential elements of breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Orange Solutions Inc. v. Net Direct Systems LLC*, No. 3:10-CV-2054-G, 2011 WL 2489413, at *3 (N.D. Tex. June 20, 2011) (Fish, Senior J.). Here, USFC does not argue that the plaintiff has failed to plead the first

two breach of contract elements listed above. *See* Motion to Dismiss at 4-6. Rather, USFC specifically contends that the plaintiff's breach of contract claim should be dismissed because Mid-America has failed to properly plead elements three and four. *Id*. With respect to breach, the third element, USFC contends that Mid-America's first amended complaint fails because it contains only insufficient conclusory allegations and not specific factual allegations establishing a breach of contract. *Id*. at 5. Moreover, with respect to damages—the fourth element— USFC argues that Mid-America's complaint falls short because Mid-America fails to allege facts establishing that Mid-America's alleged damages were a natural, probable, or foreseeable consequence of USFC's conduct. *Id*. at 6. Thus, in USFC's view, because Mid-America has neither alleged facts showing a breach, nor alleged facts showing that Mid-America's damages flow from any alleged breach by USFC, Mid-America has failed to state a plausible claim for breach of contract. *Id*.

USFC is mistaken. A careful reading of Mid-America's first amended complaint demonstrates that Mid-America has satisfied its burden of pleading a plausible breach of contract claim. *See generally* First Amended Complaint.

First, although not contested by USFC, the court concludes that Mid-America has pleaded the existence of a valid contract. In particular, Mid-America explains in paragraph six of its first amended complaint that it and USFC have entered into two purchase agreements. *See* First Amended Complaint ¶ 6. Mid-America's inclusion of

this paragraph in its first amended complaint clearly satisfies its burden of pleading the existence of a contract between USFC and Mid-America.

Second, although also not contested by USFC, the court concludes that Mid-America has properly pleaded performance of the contract between itself and USFC. As Mid-America states in its first amended complaint, Mid-America has performed all of its contractual obligations under the contract except for paying USFC a final deferred holdback payment of $714,854.24, which Mid-America alleges is allowed by the purchase agreements. *Id*. ¶¶ 12, 19. Taking these allegations as true, the court is satisfied that Mid-America has adequately pleaded performance.

Third, despite USFC's arguments otherwise, the court finds that Mid-America has satisfied its burden of pleading USFC's breach of contract. *Id*. at 4-5. In paragraph twelve of the Mid-America's first amended complaint, Mid-America lists numerous factual allegations of USFC's breach, such as the fact that several of the loan files sent to Mid-America by USFC were incomplete and contained inaccurate information. *Id*. ¶ 12. While the court agrees with USFC that some of Mid-America's allegations are purely conclusory, see *id.* ¶ 12(g) ("[l]oans had been negligently serviced . . ."), the remaining allegations in Mid-America's first amended complaint are more than "naked allegations devoid of factual dressing." *See* Motion to Dismiss at 5. These allegations list factual instances of USFC's breaches that "allow the court to draw the reasonable inference" that USFC has breached its

contract with Mid-America.  See *Ashcroft v. Iqbal*, 556 U.S. at 678.

Fourth and finally, the court finds that Mid-America has satisfied its burden of pleading that its damages flow from USFC's breach of contract.  For instance, in Mid-America's first amended complaint, Mid-America explains that: (1) USFC's failure to provide Mid-America with accurate and complete loan documentation has caused Mid-America to lose revenue on the loan portfolios associated with the purchase agreements; (2) USFC's servicing errors, including failing to meet deadlines, have resulted in Mid-America suffering losses with various government agencies; and (3) USFC's breaches have resulted in Mid-America having to make payments on claims asserted by government and non-government entities.  *See* First Amended Complaint at 6.  In short, the court concludes that these paragraphs alleges facts which establish that Mid-America's alleged damages were a natural, probable, or foreseeable consequence of USFC's conduct, thereby satisfying Mid-America's burden of pleading the fourth element of its breach of contract claim.

As the court finds that Mid-America has satisfied its burden of pleading each element of its breach of contract claim under Texas law, the court concludes that the allegations in plaintiff's first amended complaint nudge its breach of contract claim "across the line from conceivable to plausible."  See *Ashcroft v. Iqbal*, 556 U.S. at 683.  Accordingly, USFC's motion to dismiss Mid-America's breach of contract claim is denied.

2. *Negligence*

"Under Texas law, 'the elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.'" *Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536, 541 (5th Cir. 2005) (citing *IHS Cedars Treatment Center of Desoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). "Furthermore, Texas recognizes the economic loss rule, which bars parties from bringing a negligence based claim when the only injury is economic loss." *Sagebrush Solutions, LLC v. David-James, LLC*, No. 3:14-CV-2701-G, 2015 WL 1011789 at *2 (N.D. Tex. Mar. 9, 2015) (Fish, Senior J.). "To determine whether the claim sounds in contract or negligence, and thus whether the economic loss rule applies, courts analyze the conduct at issue and the nature of the injury." *Id*. "Yet, 'when the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.'" *Id*. (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). "In such a situation, the plaintiff must show an injury independent of damages for breach of contract in order to recover on the tort claim." *Id*.

Here, USFC argues that Mid-America's negligence claim is barred by the economic loss rule because all of Mid-America's damages flow directly and solely from its contract with USFC. Motion to Dismiss at 6-7. More specifically, USFC contends that Mid-America cannot show that it was injured independently of the

existence of the Purchase Agreements, as "the only tie that binds [Mid-America] and [USFC] are the two contracts—and it is these two contracts that create the only plausible basis for damages to [Mid-America.]" *Id.* at 7. Mid-America responds by arguing that at this stage in the litigation it is too early to determine whether the economic loss rule bars its negligence claim, since the court's analysis of the economic loss rule depends on evidence not considered on a Rule 12(b)(6) motion. Response at 8. Additionally, Mid-America avers that "it is possible" for it to show that its damages are independent of the Purchase Agreements since, for example, its payments to government agencies such as Ginnie Mae resulting from USFC's alleged negligence were not contemplated by the Purchase Agreements. *Id*.

After reviewing both parties' arguments, the court concludes that the economic loss rule bars Mid-America's negligence claim. While Mid-America avers in its complaint that USFC violated a number of duties imposed by statutes, regulations, and the common law, *see* First Amended Complaint at 10, Mid-America fails to explain how any of these duties arose independently of the Purchase Agreements. For example, while Mid-America alleges that USFC breached its duty to act as an ordinarily prudent servicer[*] with respect to the loans subject to the Purchase Agreements, Mid-America does not explain how USFC would have owed Mid-

---

[*] Mid-America also fails to cite any authority establishing that USFC had a duty to act as an ordinarily prudent servicer.

America such a duty independent of the Purchase Agreements.  *Id*.  In fact, it appears from the text of Mid-America's complaint that any duty owed by USFC to Mid-America arose from the representations and warranties contained within the Purchase Agreements.  See *id*. at 3-4 (listing representations and warranties establishing USFC's duties, such as having to comply with all laws and regulations).

Furthermore, in its response to USFC's motion to dismiss, Mid-America also fails to explain how its alleged injuries are separate from the Purchase Agreements.  Response at 7-8.  Instead,  Mid-America argues that it can prove that its injury is independent from the Purchase Agreements because its payment to Ginnie Mae were not contemplated by the Purchase Agreements.  *Id*. at 8.  As pointed out by USFC in its reply brief, however, it appears that Mid-America's payments to Ginnie Mae resulted purely from USFC's alleged failure to perform its contractual duties and abide by its representations and warranties.  *See* Reply at 4; First Amended Complaint at 3-4, 10.  In short, Mid-America has not shown that its payments to Ginnie Mae resulted from USFC breaching a duty that existed independently from the Purchase Agreements.

Finally, the court is not convinced by Mid-America's argument that it is too early in the litigation process to dismiss its negligence claim pursuant to the economic loss rule.  *See* Response at 8.  First, Mid-America cites no authority for its contention that it is too early, on a Rule 12(b)(6) motion, to dismiss a negligence claim as barred

by the economic loss rule. *Id*. In actuality, other judges within the Northern District have dismissed negligence claims as barred by the economic loss rule at the Rule 12(b)(6) stage in a number of instances. See e.g., *Bowman v. Citimortgage Inc.*, No. 3:14-CV-4036-B, 2015 WL 4867746 at *5 (N.D. Tex. Aug. 12, 2015) (Boyle, J.); *Obuekwe v. Bank of America, N.A.*, No. 4:11-CV-762-Y, 2012 WL 1388017 at *8 (N.D. Tex. Apr. 19, 2012) (Means, J.) (dismissing the plaintiff's negligent misrepresentation claim on a 12(b)(6) motion as barred by the economic loss rule). Here, the court concludes that it is not too early to determine whether Mid-America's injury is independent from the Purchase Agreements, or whether such injury is more than just the economic loss to the subject of the Purchase Agreements. Put simply, Mid-America has failed to make sufficient allegations showing the court that its injuries are independent from USFC's alleged breach of the Purchase Agreements. Accordingly, because there is no indication that USFC's conduct would give rise to liability independent of the fact that a contract exists between the parties, the economic loss rule precludes Mid-America's negligence claim. See *Bowman*, 2015 WL 4867746 at *4-5. Thus, USFC's motion to dismiss Mid-America's negligence claim is granted and Mid-America's negligence claim is dismissed.

### III. CONCLUSION

For the reasons stated above, USFC's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED.**

July 12, 2019.

*A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**